### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAMOUNT GEARY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 12-3220** |
| | : | |
| **STATE FARM FIRE** | : | |
| **& CASUALTY CO.,** | : | |
| **Defendant.** | : | |
| | : | |

## O R D E R

**AND NOW**, this 9th day of January, 2013, upon consideration of State Farm's Motion for Summary Judgment *(Doc. No. 13)* and all other responsive motions *(Doc. Nos. 14, 15)*, it is hereby **ORDERED** that State Farm's Motion for Summary Judgment is **GRANTED**.

Judgment is entered in favor of State Farm Fire and Casualty Company and against Lamount Geary.

The Clerk's Office shall close this case for statistical purposes.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMOUNT GEARY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 12-3220 |
| | : | |
| STATE FARM FIRE | : | |
| & CASUALTY CO., | : | |
| Defendant. | : | |
| | : | |

Diamond, J.                                                    Jan. 9, 2013

<u>**MEMORANDUM**</u>

Plaintiff Lamount Geary alleges that his insurer, Defendant State Farm Fire and Casualty Company, improperly denied his claim for $164,199.78 in home repairs. *(Doc. No. 1, Ex. A.)* State Farm moves for summary judgment. *(Doc. No. 13.)* Because I conclude that the State Farm Policy does not cover the damage to Plaintiff's home, I will grant the Motion.

**I.       STANDARDS**

Both Parties correctly note that Pennsylvania law governs this dispute. *(Doc. No. 13 at 26)*; *(Doc. No. 14 at 16)*; <u>Regents of the Mercersburg Coll. v. Republic Franklin Ins. Co.</u>, 458 F.3d 159, 163 (3d Cir. 2006) (an insurance contract is governed by the law of the state in which the contract was made).

*A.   Summary Judgment*

The court may grant summary judgment "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must initially show the absence of any genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). An issue is material only if it could affect the result of the suit

under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. See Celotex, 477 U.S. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

    *B.   Breach of Contract*

To make out a prima facie case, Plaintiff must show the existence of a contract, breach of a duty imposed by the contract, and resulting damages. Presbyterian Med. Ctr. v. Budd, 832 A.2d 1006, 1070-71 (Pa. Super. Ct. 2003). Under Pennsylvania law, the interpretation of an insurance contract is a legal question for the court. Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997). Accordingly, at summary judgment, the court may determine as a matter of law whether an insurance claim is covered or excluded. Brown v. Am. Motorists Ins. Co., 930 F. Supp. 207, 208 (E.D. Pa. 1996).

    *C.   Construing the Insurance Policy*

The court must read an insurance contract as a whole. Koval v. Liberty Mut. Ins. Co., 531 A.2d 487, 489 (Pa. Super. Ct. 1987). When policy language is clear and unambiguous, the court is required to give effect to that language. Gene & Harvey Builders, Inc. v. Pa. Mfr.'s Assoc. Ins. Co., 517 A.2d 910, 913 (Pa. 1986). When the language of the policy is ambiguous, however, "the policy is to be construed in favor of the insured." Gillin v. Universal Underwriters Ins. Co., No. CIV.A.09-5855, 2011 U.S. Dist. LEXIS 21842, at *13 (E.D. Pa. Mar. 4, 2011). A contract is ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004). The court "should read policy

provisions to avoid ambiguities if possible and should not torture the language to create them." Spezialetti v. Pac. Emp'rs Ins. Co., 759 F.2d 1139, 1142 (3d Cir. 1985).

    D.  *Burden of Persuasion*

State Farm issued Plaintiff an "all risk" policy. The Third Circuit has held that such a policy allows recovery for "all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." Intermetal Mexicana, S.A. v. Ins. Co. of N. Am., 866 F.2d 71, 74-76 (3d Cir. 1989). With an all risk policy, the insurer refusing coverage must show that an exclusion from coverage applies. N. Ins. Co. v. Aardvark Assocs., 942 F.2d 189, 194 (3d Cir. 1981). Once the insurer makes such a showing, the insured must establish the applicability of an exception to the exclusion. Fischer & Porter Co. v. Liberty Mut. Ins. Co., 656 F. Supp. 132, 140 (E.D. Pa. 1986).

## II.    BACKGROUND

In setting out the background of this case, I have construed all facts and made all reasonable inferences in Plaintiff's favor.

    A.  *The Policy*

On March 8, 2010, Plaintiff renewed his all risk home owner's insurance policy with State Farm. The Policy was written by State Farm and excludes certain losses from coverage.

    *Water and Seepage Damage*

The Policy excludes a loss if it "would not have occurred in the absence of" water damage. *(Doc. No. 13, Ex. B at 27.)* "Water damage" includes damage caused by "surface water" and "water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure." *(Id.)* The Policy also

excludes losses "directly or immediately caused by . . . continuous or repeated seepage or leakage or water or steam from a plumbing system." *(Id. at 26.)*

### Damage from Collapse

The Policy defines "collapse" as "actually fallen down or fallen to pieces." *(Id. at 23.)* The Policy excludes coverage for damage caused by all forms of gradual collapse. Damage caused by "settling, cracking, shrinking, bulging, expansion, sagging or bowing" is thus also excluded. *(Id.)* There is an exception to this exclusion, however, if the collapse constitutes a "direct physical loss to covered property involving the ***sudden***, entire collapse of a building or any part of the building."*(Id.)(emphasis added.)* Such a "covered collapse" must have been caused by "hidden decay" or "weight of contents." *(Id.)*

### B.  Plaintiff's Damage Claim

In February 2011, during the pendency of his State Farm Policy, Plaintiff sustained damage to his ranch-style home in Warminster, Pennsylvania. *(Doc. No. 14 at 13.)* The floors in two rooms sank, separating from the wall in several places. *(Id.)* The necessary repairs were estimated to be $164,199.78. *(Doc. No. 13 at 21.)* Plaintiff sought coverage for the repairs under his State Farm Policy. *(Doc. No. 14 at 13.)* Plaintiff hired Alliance Adjustment Group to represent him in this claim. Alliance assigned public adjuster Carl Nicholls to inspect the property in April 2011. *(Id.)* Nicholls took photographs of the damaged floors and the crawlspace beneath Plaintiff's home. *(Id.)* Nicholls reported that the floors had "fallen down" due to the weight of the furniture in the two rooms. *(Id.)*

On April 21, 2011, State Farm assigned Alice Hoffman to Plaintiff's claim. *(Doc. No. 13 at 15-16.)* Hoffman inspected Plaintiff's home on April 28th. *(Id.)* She also arranged for Michael Black of the National Forensic Consultants to conduct an inspection on May 16th. *(Id.)* Black

reported that the floors' shared support beam was bowed as a result of severe rot and deterioration caused by humidity in the crawlspace under the floors. (*Id.*) He also reported excessive levels of moisture and several pools of standing water in the crawlspace. (*Id., Ex. E at 4-5.*)

Hoffman subsequently informed Plaintiff that State Farm had denied his claim because the loss was caused by water damage, which the Policy explicitly excludes from coverage. (*Id., Ex. F at 2.*) Plaintiff sued State Farm in the Philadelphia Common Pleas Court, alleging breach of contract. State Farm removed to this Court, invoking diversity jurisdiction. (*Doc. No. 1);* 28 U.S.C. § 1332 (2005). The Parties have completed discovery, and State Farm moves for summary judgment. (*Doc. No. 13.*)

## III.    DISCUSSION

State Farm argues, *inter alia*, that Plaintiff's damage is not covered because of the water and plumbing seepage exclusions. (*Doc. No. 13 at 27, 31; Doc. No. 15 at 6.*) Although his argument is less than clear, Plaintiff disputes the application of these exclusions.

### A.    *Water and Plumbing Seepage Exclusions*

State Farm has established that these exclusions apply to Plaintiff's claim. State Farm's photographs show that there was standing water in the crawlspace and significant deterioration of the support beam due to moisture. (*Doc. No. 13, Ex. E at 10-13.*) Michael Black reports that "the cause of the sagging floor and partially failed support beam was the gradual deterioration of that beam arising from decay related to the *excessive moisture levels* within the crawlspace environment." (*Id., Ex. E at 5) (emphasis added.)* Black also notes that the standing water and the high moisture levels in the crawlspace contributed to the sagging floors. (*Id.*) Black further notes that continuous seepage from bathroom plumbing caused the excessive moisture levels that also contributed to the sagging. (*Id.*)

State Farm's second expert, Gary Popolizio, similarly concludes that "the crawl space area beneath the home is experiencing the effects of long-term age, ground and surface water intrusion, and a lack of sufficient ventilation, as well as rot and deterioration to the wood framing materials." *(Id., Ex. J at 7.)* Popolizio opines that ground water seeping through the foundation caused this damage. *(Id.)*

The State Farm Policy explicitly excludes coverage when water or plumbing seepage contributes *in any way* to the insured's damage. *(Id., Ex. B at 27.)* Although I must resolve Policy ambiguities in Plaintiff's favor, these exclusions are not ambiguous. Courts have repeatedly found identical exclusion language to be unambiguous. See Colella v. State Farm Ins. Co., No. CIV.A.09-2221, 2010 U.S. Dist. LEXIS 31895, at *10 (E.D. Pa. Apr. 1, 2010) (water damage exclusion unambiguous); T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 455 F. Supp. 2d 284, 291-92 (M.D. Pa. 2011) (same); Hughes v. State Farm Ins. Co., No. CIV.A.05-357, 2007 U.S. Dist. LEXIS 71962, at *23-24 (W.D. Pa. Sept. 27, 2007) (same); Davis v. State Farm Fire & Cas. Co., 336 Fed. App'x 770, 772 (10th Cir. 2009) (same); Ellis v. State Farm Fire & Cas. Co., 322 Fed. App'x 594, 597 (10th Cir. 2009) (plumbing seepage terms unambiguous). Like the policies in those cases, Plaintiff's State Farm Policy "clearly and succinctly states that regardless of the cause, any water damage which seeps into the foundation from water below the surface of the ground is not covered by the Policy." Colella, 2010 U.S. Dist. LEXIS 31895, at *10.

In these circumstances, the burden shifts to Plaintiff to show that an exception to the water and plumbing seepage exclusions applies. Fischer & Porter Co., 656 F. Supp. at 140. Plaintiff has not made such a showing. On the contrary, Plaintiff testified that "[d]ampness gets down [in the crawlspace] constantly because it's a dirt floor." *(Doc. No. 13, Ex. H at 5.)* He also acknowledged that as long as he has lived in the house the crawlspace was damp. *(Id.)* Significantly, Plaintiff's expert Nicholls did not disagree with State Farm's experts respecting water damage. Rather, he

addressed only the question of whether the weight of the furniture caused the floors to collapse. *(Id., Ex. G at 2.)* Nicholls simply ignored the questions of whether there was water in the crawlspace or whether water damage contributed in any way to the collapse. Indeed, Nicholls never fully inspected the crawlspace. Rather, he "put [his] hand down [in the crawlspace] and took a picture with [his] camera just so [he] could see." *(Id., Ex. G, at 5.)*

This evidence, construed in the light most favorable to Plaintiff, shows that water damage under the floors and the weight of the Plaintiff's furniture caused the floors' collapse. Once again, if water was even a contributing factor, the damage is explicitly excluded from coverage. *(Id., Ex. B at 27.)* State Farm has certainly shown that water contributed to the collapse. The opinion of Plaintiff's expert that the weight of Plaintiff's furniture also contributed to the collapse does not show that an exception to the water damage exclusion applies. Accordingly, the damage in question is subject to the water damage exclusion.

### C.   *"Covered Collapse"*

Once again, Plaintiff's eight page legal memorandum is extremely confusing. Plaintiff apparently believes the damage his home sustained was "covered" under the "hidden decay" or "weight of contents" exceptions to the collapse exclusion. *(Doc. No. 14 at 5.)* Even if I agreed that either of these exceptions applies, the water and plumbing seepage exclusions might well still bar recovery. In any event, I need not resolve that question because neither the "hidden decay" nor the "weight of contents" exception applies.

As I described earlier, the Policy explicitly excludes coverage for all forms of gradual collapse. *(Doc. No. 13, Ex. B at 13.)* To constitute a "covered collapse," the damage must be a "direct physical loss . . . involving the ***sudden***, entire collapse of a building or part of a building." *(Id.)* It is undisputed that Plaintiff's floors sank gradually. *(See id., Ex. E at 5 (State Farm's Expert*

*Michael Black: "**gradual deterioration**" caused the floors to sag);* id., *Ex. J at 7 (State Farm's Expert Gary Poplizio: "the crawl space area beneath the home is experiencing the effects of **long-term** age, ground and surface water intrusion, lack of sufficient ventilation, as well as rot and deterioration to the wood framing materials") (emphasis added).)* Plaintiff has presented no evidence to show that his floors collapsed suddenly. In the absence of supporting evidence, Plaintiff's apparent allegation that the collapse was sudden is insufficient to defeat State Farm's Motion. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (at summary judgment, "a nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings").

In these circumstances, even if Plaintiff could show that "hidden decay" or "weight of contents" caused the floors to sink (and Plaintiff has made no such showing), because the collapse was gradual, it remains excluded from coverage under the State Farm Policy.

## IV.    CONCLUSION

In sum, State Farm has shown that the damage to Plaintiff's home was excluded from coverage. State Farm thus properly denied Plaintiff's insurance claim. Accordingly, I will grant State Farm's Motion for Summary Judgment.

An appropriate Order follows.

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.